**UNITED STATES of America, Appellee,**

v.

**Gary BUSH, Defendant–Appellant.**

**No. 329, Docket 93–1842.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1994.

Decided Feb. 8, 1995.

512

David A. Lewis, The Legal Aid Soc., New York City, for defendant-appellant.

Mark W. Lerner, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Brooklyn, NY, of counsel), for appellee.

Before: MINER, McLAUGHLIN, and CABRANES, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Gary Bush was convicted in the United States District Court for the Eastern District of New York (Edward R. Korman, *Judge*) of armed bank robbery and related charges, in violation of 18 U.S.C. §§ 371, 2113(a), 924 and 922(g). Bush testified at trial. At the end of his re-direct examination, jurors asked Bush questions to clarify his testimony. Bush's counsel did not object to the questioning.

On appeal, Bush now claims that direct juror questioning of a criminal defendant constitutes *per se* reversible error. Because Bush cannot demonstrate plain error, and because the trial court did not abuse its discretion, we affirm the conviction.

Additionally, the government concedes that, although it will not affect the amount of prison time Bush will serve, we should vacate and remand solely to reduce the sentence on the conspiracy count to the statutory maximum.

## BACKGROUND

Defendant was indicted for armed bank robbery and related charges, in violation of 18 U.S.C. §§ 371, 2113(a), 924 and 922(g). At trial, he testified that, while he drove the getaway car, he did not know that his passenger had just robbed a bank. He explained that on his way to a car dealership he had parked in a lot near the bank. While walking to the dealership, he heard a noise near his car. When he returned to his car, he saw Morris Fillyaw sitting in the car. Fillyaw offered Bush money for a ride. Bush accepted the offer, got into his car, and drove away with Fillyaw.

During Bush's testimony, Juror # 2 blurted out that he was confused and that he had a question for Bush. The judge told Juror # 2 to write down his question, adding that, if the juror was still confused at the end of Bush's testimony, he could write the judge a note, and the judge would ask Bush the question. Defense counsel did not object.

Upon completion of Bush's cross-examination, the judge asked Juror # 2 if his question had been answered. The juror said "yes," adding:

> I was unclear about how—when he came out of the bank and he was walking, that portion there where the cars were relatively parked, I couldn't quite follow that.

The judge asked defense counsel to pursue the matter on re-direct.

When defense counsel concluded the re-direct and with the defendant still on the stand, counsel himself initiated a dialogue with Juror # 2:

DEFENSE COUNSEL: Does that answer your question, sir?

JUROR # 2: Yes.

Now several other jurors entered the lists:

ALTERNATE # 1: Where was the other car parked?

DEFENDANT: Excuse me?

DEFENSE COUNSEL: Where were the other cars parked?

DEFENDANT: Oh, the other cars?

DEFENSE COUNSEL: On this road [referring to a diagram of the crime scene].

DEFENDANT: Okay. There were cars parked here, which I passed to get into this space. There was cars along here, all along in here. Not necessarily bumper to bumper, but there was cars in here. All on this side here was cars.

THE COURT: Is that where we're referring to 134th?

DEFENDANT: 134th Road.

DEFENSE COUNSEL: 134th Road.

JUROR # 3: After you initially parked, you went to see the—

DEFENDANT: Yeah.

JUROR # 3: —car—then you walked back on the sidewalk to the back parking lot?

DEFENDANT: Not exactly. After I parked I came back to go to the car dealer, okay? Same way I came in I walked out, okay?

Now, when I got here, I heard noises, when I was about here. Okay, now, after I heard the noises, they must have been I'll say right around here somewhere, okay? They had already—because my back was to them.

Okay. Now when I heard the noises I turned here, okay? Now, they was right around in here somewhere. They proceeded this way. They was walking fast, however. Okay. I turned around, noticing—you know, the bag and all this stuff, right. I walked slowly back this way, okay?

I seen one of the witnesses over here. There were some more cars over here, okay? I stopped briefly, then I walked all the way up, then I stopped here, then I looked.

I didn't see anybody at first, and I notice they were by my car. Then I saw the defendant's head in my car—not supposed to be in there. But nevertheless, then I immediately went to my car. That's when I ran into Fillyaw.

THE COURT: One more question.

JUROR # 1: You say there were two men. What happened to the other—

THE COURT: What happened to the other person that you saw?

DEFENDANT: Well, now when I got up here, I didn't see anyone, okay? Now,

I'm assuming that the car that was going down the street at the time was the car that he was in. I don't know, okay? I know other stuff other than that, but it has nothing to do with anything that anybody asked me, so I didn't say anything about any of it.

THE COURT: Okay, thank you very much.

Bush was convicted on four counts: (1) conspiracy to commit armed bank robbery, 18 U.S.C. § 371; (2) armed bank robbery, 18 U.S.C. § 2113(a); (3) illegal possession of a firearm, 18 U.S.C. § 924; and (4) possession of a firearm while committing a felony, 18 U.S.C. § 922(g)(1). He received concurrent 25–year sentences on counts one, two and four, and a consecutive five-year sentence on count three, for a total of to 30 years' imprisonment. Bush now appeals. Although Bush does not dispute any sentencing issue, the government concedes that the district court's 25–year sentence on the conspiracy count exceeded the five-year statutory maximum for that violation. Accordingly, the government suggests that we vacate and remand solely to reduce the sentence on the conspiracy count to the statutory maximum.

## DISCUSSION

### I. *Juror Questioning of Witnesses*

Bush urges this Court to adopt an absolute rule prohibiting jurors from directly questioning witnesses in criminal cases. He contends that such a prohibition is essential when the witness is the defendant himself. We disagree.

At the outset, we note that Bush's counsel never objected to the jurors' questioning of Bush. Thus, the error, if any, is not preserved for appellate review unless defendant can show "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b); *see United States v. Johnson,* 892 F.2d 707, 710 (8th Cir.1989) (citing *United States v. Land,* 877 F.2d 17, 19 (8th Cir.), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989)).

The plain error doctrine "authorizes the Courts of Appeals to correct only particularly egregious errors ... that seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (internal quotations omitted). Accordingly, litigants usually must show prejudice to establish plain error. *See United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993); *Young,* 470 U.S. at 16–17 n. 14, 105 S.Ct. at 1047 n. 14. The plain error exception to the contemporaneous objection rule should "be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Young,* 470 U.S. at 15, 105 S.Ct. at 1046 (internal quotations omitted).

Bush cannot show prejudice. The trial judge allowed only limited questioning, and kept it under his direct control. The questions merely clarified juror confusion about the position of the parked cars near the crime scene, the route by which Bush returned to his car after leaving the car dealership, and the whereabouts of a second robber who did not get into Bush's car. Moreover, the record indicates that both Bush and his trial counsel cooperated with the limited juror questioning, and probably derived some strategic advantage from it by establishing a rapport with the jury.

Notwithstanding his failure to object at trial, Bush argues for a *per se* rule banning jurors from questioning witnesses. We have already held, however, that direct questioning by jurors is a "matter within the judge's discretion, like witness-questioning by the judge himself." *United States v. Witt,* 215 F.2d 580, 584 (2d Cir.) (citing *United States v. Rosenberg,* 195 F.2d 583, 593–94 (2d Cir.), *cert. denied,* 344 U.S. 838, 73 S.Ct. 21, 97 L.Ed. 652 (1952)), *cert. denied,* 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954); *see generally* Fed.R.Evid. 611(a) (instructing the court to "exercise reasonable control over the mode and order of interrogating witnesses").

Every circuit court that has addressed this issue agrees. *See United States v. Sutton,* 970 F.2d 1001, 1004–07 (1st Cir.1992); *United States v. Lewin,* 900 F.2d 145, 147 (8th Cir.1990); *DeBenedetto v. Goodyear Tire & Rubber Co.,* 754 F.2d 512, 516 (4th Cir.1985);

*United States v. Callahan,* 588 F.2d 1078, 1086 (5th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *United States v. Gonzales,* 424 F.2d 1055, 1056 (9th Cir. 1970) (per curiam). State courts, moreover, have overwhelmingly placed juror questioning of witnesses within the trial judge's discretion. *See, e.g., People v. Bacic,* 202 A.D.2d 234, 608 N.Y.S.2d 452, 452 (1st Dep't), *appeal denied,* 83 N.Y.2d 1002, 616 N.Y.S.2d 483, 640 N.E.2d 151 (1994); *see also* 3 John H. Wigmore, Evidence in Trials at Common Law § 784a. American courts have long sanctioned the practice, *see State v. Kendall,* 143 N.C. 659, 57 S.E. 340 (1907), and indeed its common law roots are deeply entrenched. *See* 3 Sir William Blackstone, Commentaries on the Laws of England 373 (William D. Lewis ed. 1922) (1765) ("[T]he occasional questions of the judge, the jury, and the counsel, propounded to the witnesses on a sudden, will sift out the truth much better than a formal set of interrogatories previously penned and settled . . . .").

Bush cites language disfavoring the practice in *United States v. Johnson,* 892 F.2d 707, 711 (8th Cir.1989) (Lay, C.J., concurring) ("[A]llowing juror questions during trial is inherently prejudicial and should not be condoned.") and *DeBenedetto,* 754 F.2d at 516 ("[T]he practice of juror questioning is fraught with dangers which can undermine the orderly progress of the trial to verdict."). Despite this cautionary language, however, both *Johnson* and *DeBenedetto* refused to establish a rule totally banning juror questioning of witnesses. Furthermore, the *Johnson* court held that juror questioning of a criminal defendant does not constitute plain error. *See Johnson,* 892 F.2d at 709–10 (six questions were asked, of which five were directed to the defendant and one to a witness).

Although we reaffirm our earlier holding in *Witt* that juror questioning of witnesses lies within the trial judge's discretion, we strongly discourage its use. The most troubling concern is that the practice risks turning jurors into advocates, compromising their neutrality. *See Johnson,* 892 F.2d at 713 (Lay, C.J., concurring). It is difficult for jurors to be both active participants in the adversarial process, embroiled in the questioning of witnesses, and detached observers, passing on the credibility of the witnesses and the plausibility of the facts presented. *See id.* ("The fundamental problem with juror questions lies in the gross distortion of the adversary system and the misconception of the role of the jury as a neutral factfinder in the adversary process.").

If, perchance, jurors pose questions that are less inquiries and more commentary, they further impair their neutrality. The appropriate occasion for jurors to express skepticism is during deliberations, not during the trial. And the appropriate time to start deliberations is after the jury has heard all the evidence, the arguments of counsel and the judge's charge on the law. At the very least, jury questioning is a subliminal invitation to launch prematurely into evaluating the evidence. *See DeBenedetto,* 754 F.2d at 517.

Jury questioning also creates the risk that jurors will ask prejudicial or otherwise improper questions. *See Johnson,* 892 F.2d at 713 (Lay, C.J., concurring). Most jurors have no training in the law, and cannot be expected to know what is admissible under the rules of evidence. Prejudicial lines of questioning vigorously pursued carry the added vice that a fellow juror's imprimatur will lend the questions and answers added cachet. Moreover, remedial measures taken by the court to control jurors' improper questions may embarrass or even antagonize the jurors if they sense that their pursuit of the truth has been thwarted by rules they do not understand. *See DeBenedetto,* 754 F.2d at 516.

Finally, the practice will often impale attorneys on the horns of a dilemma. If attorneys object to questions posed by the jurors, they risk alienating the jury. On the other hand, foregoing objections will usually constitute a waiver of even the most pernicious errors. The solution, sometimes suggested, that attorneys can object at the next break outside the presence of the jury may indeed preserve appellate review; but, even with remedial instructions from the court, the poison introduced by an improper inquiry from

a fellow juror has already been absorbed by the entire jury.

■ Balancing the risk that a juror's question may be prejudicial against the benefit of issue-clarification will almost always lead trial courts to disallow juror questioning, in the absence of extraordinary or compelling circumstances. If a trial judge encounters such circumstances, we endorse a variant of the procedure set forth in *United States v. Ronder,* 639 F.2d 931, 934 (2d Cir.1981) that dealt with juror questions arising during deliberations: (1) jurors should be instructed to submit their questions in writing to the judge; (2) outside the presence of the jury, the judge should review the questions with counsel, who may then object; and (3) the court itself should put the approved questions to the witnesses. *See Sutton,* 970 F.2d at 1005–06 (advising that jurors submit written questions to the judge, and that the judge call counsel to sidebar to consider objections); *United States v. Polowichak,* 783 F.2d 410, 413 (4th Cir.1986) (recommending that the jurors submit proposed questions to the judge, who would then pose acceptable questions to the witness).

Because, in the instant case, the limited and controlled juror questioning allowed by the district court did not prejudice Bush, he can .demonstrate neither plain error nor abuse of discretion.

II. *Sentence in Excess of Statutory Maximum*

Although it does not affect the amount of prison time he will serve, Bush's concurrent 25–year sentence on the conspiracy count exceeded the five-year statutory maximum for that violation. *See* 18 U.S.C. § 371. Therefore, we vacate the sentence, and remand solely for resentencing on this count. *See United States v. Piervinanzi,* 23 F.3d 670, 676 (2d Cir.1994); *United States v. Restrepo,* 986 F.2d 1462, 1462–63 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993).

CONCLUSION

We affirm the conviction, vacate the judgment of sentence, and remand for the limited purpose of reducing the concurrent conspiracy count to the statutory maximum.

AFFIRMED in part, VACATED in part, and REMANDED.