No. 94-608

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

CHARLES MOSES GRAVES,

    Defendant and Appellant.



FILED

DEC 14 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            William F. Hooks, State Appellate Defender, Helena,
            Montana

        For Respondent:

            Joseph P. Mazurek, Attorney General, Elizabeth L.
            Griffing, Assistant Attorney General, Helena,
            Montana; Thomas J. Esch, Flathead County Attorney,
            Ed Corrigan, Deputy Flathead County Attorney,
            Kalispell, Montana


Submitted on Briefs:  September 28, 1995

Decided:  December 14, 1995

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Charles Moses Graves (Graves) was convicted by a jury of felony theft and burglary. During the trial, the District Court for the Eleventh Judicial District, Flathead County, permitted jurors to submit written questions to be asked of witnesses at the conclusion of their testimony. Graves' counsel objected to this practice and it is on this basis that Graves appeals. We affirm.

The sole issue raised by Graves on appeal is:

Did the trial court deny Graves a fair trial by an impartial jury, by permitting the jurors to pose questions during trial?

Background Facts

On February 28, 1994, Graves was charged by information with burglary in connection with an early-morning incident in the Kalispell Center Mall, where Graves was employed as a janitor. The information was later amended to include a charge of felony theft. The amended information charged that between February 4 and February 5, 1994, Graves knowingly entered and remained unlawfully in the Great Bear Bakery in the Kalispell Center Mall with the purpose to commit the offense of theft, and that he obtained and exerted unauthorized control over more than $500 in currency and checks belonging to the owners of the bakery.

Graves entered pleas of not guilty to the charges and proceeded to trial on May 16, 1994. Following voir dire and outside the presence of the jury, the District Court inquired whether either party wished to object to the court's standard practice of permitting jurors to submit to the court written

questions to be read to witnesses following their testimony. Defense counsel objected to this procedure, while counsel for the State argued that this was a matter for the court's discretion.

In his preliminary instructions to the jury, the trial judge instructed the jury that they would be permitted to ask questions of witnesses. In outlining the procedure to be followed, the judge stated that "if at the conclusion of a witness' [testimony] you feel that some significant ground has been left unturned or something is not totally clear to you but could be clarified, you're welcome to ask any number of questions you wish."

The trial judge instructed the jurors to write out their questions and hand them to the bailiff who would then deliver them to the judge for review. Both counsel were given the opportunity to review the questions and make objections in a private side bar with the court. The judge read the questions to the witnesses as they were submitted and counsel were then permitted to ask follow-up questions. In the course of the trial, the District Court permitted 13 questions from the jury, including several questions for the defendant at the conclusion of his testimony.

The jury found Graves guilty on both counts. At his sentencing hearing, Graves admitted that he had committed the burglary and theft. The District Court sentenced Graves to 20 years in the Montana State Prison for the burglary conviction and 10 years for the theft conviction. The sentences were to run concurrently to each other, but consecutively to the sentences for two prior convictions. Graves was also designated a persistent

3

felony offender and sentenced to an additional 15 years in the Montana State Prison with 10 years suspended.

## Discussion

Did the trial court deny Graves a fair trial by an impartial jury, by permitting the jurors to pose questions during trial?

Graves argues that allowing the jurors to pose questions to witnesses during his trial encouraged the jurors to become advocates and jeopardized the adversarial nature of his trial. Graves claims that juror participation in the presentation of evidence encourages jurors to depart from their role as passive listeners and assume an active adversarial or inquisitorial stance and that this practice spawns premature deliberation by the jurors.

The State argues that allowing jurors to question witnesses is within the sound discretion of the trial court and, if properly structured and organized, this practice can be beneficial to both parties. The State claims that there is no constitutional mandate that jurors sit silently and passively accept the omission of certain facts that may be helpful in rendering their decision. In addition, the State points out that juror questions may bring to the court's attention improper concerns which can be promptly addressed with cautionary instructions.

While this Court has not previously addressed the issue of whether jurors should be permitted to pose questions to witnesses in a criminal trial, courts in other jurisdictions have struggled with this issue for some time. A brief examination of some of these cases is appropriate in resolving this issue.

4

In 1970, in an opinion lacking any analysis of this issue, the Ninth Circuit Court of Appeals held that allowing a juror to submit a question to the court was not error. U.S. v. Gonzalez (9th Cir. 1970), 424 F.2d 1055, 1056.

Similarly, in 1979, the Fifth Circuit Court of Appeals determined that the proper handling of juror questions is a matter within the discretion of the trial judge. U.S. v. Callahan (5th Cir. 1979), 588 F.2d 1078, 1086. In Callahan, the court of appeals stated:

> There is nothing improper about the practice of allowing occasional questions from jurors to be asked of witnesses. If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it. If nothing else, the question should alert trial counsel that a particular factual issue may need more extensive development. Trials exist to develop truth. It may sometimes be that counsel are so familiar with a case that they fail to see problems that would naturally bother a juror who is presented with the facts for the first time.

Callahan, 588 F.2d at 1086.

On the other hand, in a 1985 opinion, the Fourth Circuit Court of Appeals pointed out that although it also believed that juror questioning is a matter within the trial court's discretion, the practice of juror questioning is "fraught with dangers which can undermine the orderly progress of the trial to verdict." DeBenedetto v. Goodyear Tire & Rubber Co. (4th Cir. 1985), 754 F.2d 512, 516. In this case, jurors were allowed to pose questions orally in the presence of other jurors. The court of appeals expressed its concern about jurors asking improper or prejudicial questions and about jurors attaching more significance to answers

5

to questions posed by jurors. DeBenedetto, 754 F.2d at 516-17. However, because it could detect no prejudice to either party and because appellants did not object to the procedure at the time of trial, the court of appeals did not find error in the use of juror questions in that case. DeBenedetto, 754 F.2d at 517.

A few years later, in U.S. v. Lewin (8th Cir. 1990), 900 F.2d 145, the Eighth Circuit Court of Appeals set forth certain safeguards that should be used if a trial court decides to permit jurors to ask questions of witnesses. In Lewin, the trial court informed the jurors at the beginning of the trial that they would be allowed to ask questions of each witness after cross-examination. The jurors asked their questions orally and objections were discussed at the bench, but within the presence of the jury. Lewin, 900 F.2d at 147. The court of appeals stated that if a trial court decides to permit jurors to ask questions, it should consider requiring jurors to submit their questions in writing, or orally out of the presence of the other jurors, and without prior discussion with the other jurors. Lewin, 900 F.2d at 148.

In the case before us on appeal, Graves relies on a 1992 case, Morrison v. State (Tex.Crim.App. 1992), 845 S.W.2d 882, for his contention that the risks posed by permitting jurors to question witnesses in a criminal trial far outweigh any benefits. In Morrison, the trial judge instructed the jury that following the testimony of each witness, jurors could submit written questions to the court to be asked of that witness. The court would rule on the

6

questions outside of the presence of the jury.  If a question was ruled admissible, the judge would recall the jury and read the question to the witness.  Counsel would then be allowed to ask follow-up questions limited to the subject matter of the juror's question.  During trial, a juror question was ruled inadmissible, however, the prosecutor was allowed to present additional evidence based on that question.  Morrison, 845 S.W.2d at 883.

In his appeal, Morrison claimed that juror questions amounted to a form of communication between the jurors and the parties and called into question the integrity of the adversary system. Morrison, 845 S.W.2d at 884.  The Court of Criminal Appeals of Texas agreed holding that no authority established or authorized jurors to ask questions of witnesses in the criminal jurisprudence of Texas, therefore, permitting juror questions was error. Morrison, 845 S.W.2d at 889.

The same year that Morrison was decided, the First Circuit Court of Appeals held that allowing juror-inspired questions in a criminal case is not prejudicial per se but is a matter committed to the sound discretion of the trial court.  U.S. v. Sutton (1st Cir. 1992), 970 F.2d 1001, 1005. In Sutton, the jury was permitted to ask questions of witnesses in writing.  The judge reviewed the questions and, if he determined they were relevant, he asked them for the jury and then asked follow-up questions.  Sutton, 970 F.2d at 1003.

The appellant in Sutton asserted that the questioning of witnesses by jurors in a criminal trial "is inherently prejudicial,

invades counsel's province, distorts the roles of judge and jury, and unfairly inhibits objections." Sutton, 970 F.2d at 1004. The court of appeals disagreed holding that "the lower court's use of a small number of juror-inspired questions, under carefully controlled conditions, did not impinge upon the defendant's substantial rights or tarnish the fundamental fairness of his trial." Sutton, 970 F.2d at 1008.

Likewise, in U.S. v. Cassiere (1st Cir. 1993), 4 F.3d 1006, the First Circuit Court of Appeals determined that the trial court did not commit plain error in allowing eleven juror-inspired questions to be asked of witnesses including four questions asked of the defendant. The court of appeals found that the questions asked were relatively bland in character and designed to clarify and explain testimony already given. Cassiere, 4 F.3d at 1017. However, the court of appeals stated that the practice should be reserved for exceptional situations, and should not become the routine, even in complex cases. Cassiere, 4 F.3d at 1018.

The courts in three recently decided cases took varying views on the practice of permitting jurors to pose questions to witnesses. In U.S. v. Bush (2nd Cir. 1995), 47 F.3d 511, 514, the Second Circuit Court of Appeals stated that every circuit court that has addressed this issue agrees that questioning by jurors is a matter within the judge's discretion and is similar to witness-questioning by the judge himself. Moreover, the court of appeals claimed that state courts have overwhelmingly placed juror questioning of witnesses within the trial judge's discretion.

8

Bush, 47 F.3d at 515.   Nonetheless, the court of appeals discouraged this practice in Bush finding that the practice risks turning jurors into advocates, thereby compromising their neutrality.  Bush, 47 F.3d at 515.

The court of appeals pointed out that

the practice will often impale attorneys on the horns of a dilemma.  If attorneys object to questions posed by the jurors, they risk alienating the jury.  On the other hand, foregoing objections will usually constitute a waiver of even the most pernicious errors.

Bush, 47 F.3d at 515.

Several months later, that same court stated in U.S. v. Ajmal (2nd Cir. 1995), 67 F.3d 12, 14, that

the practice of allowing juror questioning of witnesses is well entrenched in the common law and in American jurisprudence.  Indeed, the courts of appeals have uniformly concluded that juror questioning is a permissible practice, the allowance of which is within a judge's discretion. [citations omitted] Nonetheless, the courts of appeals are similarly unified in their disapproval of the general practice of juror questioning of witnesses.

Hence, in Ajmal, the court of appeals determined that the trial court had abused its discretion by allowing jurors to question witnesses as a matter of course, as the practice should be reserved for exceptional situations, and should not become routine, even in complex cases.   The court of appeals said that if allowed to formulate questions throughout the trial, jurors may prematurely evaluate the evidence and adopt a particular position as to the weight of that evidence before considering all the facts.  Ajmal, 67 F.3d at 14.

Most recently, in U.S. v. Bascope-Zurita (8th Cir. 1995), 68

9

F.3d 1057, the Eighth Circuit Court of Appeals determined that the trial court did not err by permitting jurors to ask questions of witnesses in a drug prosecution. The court of appeals held that the practice of allowing juror questions is a matter committed to the sound discretion of the trial court and that the procedure used by the trial court of submitting written questions to the court so that evidentiary issues could be resolved, did not constitute an abuse of discretion. Bascope-Zurita, 68 F.3d at 1064.

After reviewing these decisions from other jurisdictions, we agree that juror questioning of witnesses is a matter within the sound discretion of the trial judge. Moreover, Montana's Rules of Evidence provide that the trial court controls the mode and order of interrogating witnesses and presenting evidence so as to "make the interrogation and presentation effective for the ascertainment of the truth." Rule 611(a)(1), M.R.Evid.

While we neither encourage nor discourage the practice of allowing jurors to question witnesses, we, nevertheless, caution trial courts which allow this practice to be ever mindful that the jury's fact-finding role is to be accomplished in a spirit of neutrality, fairness and open-mindedness. Accordingly, juror questioning of witnesses must be at all times carefully controlled by the court to insure that individual jurors do not lapse into an advocacy role, or by their questions intimate any prejudgment of the evidence or the credibility of the witnesses being questioned. Additionally, we emphasize that the adoption of this practice is at the discretion of the trial court. Jurors have no inherent right

10

to question witnesses, and juror questioning may not be appropriate in all cases or of all witnesses.

To that end, we conclude that if a judge, in his or her discretion, decides to allow this practice, certain minimum safeguards must be implemented. These safeguards include: (I) the questions should be factual, not adversarial or argumentative, and should only be allowed to clarify information already presented; (2) the questions should be submitted to the court in writing; (3) counsel should be given an opportunity to object to the questions outside of the presence of the jury; (4) the trial judge should read the questions to the witness; and (5) counsel should be allowed to ask follow-up questions.

In the case before us on appeal, the District Court did use the appropriate safeguards by allowing only written questions to be submitted to the court and reviewing these questions for evidentiary problems. Both counsel were given the opportunity to object to the questions in a private side-bar with the court and to ask follow-up questions of the witnesses. In addition, the questions were intended to clarify certain facts brought out by the witnesses and were non-argumentative.

Graves also argues that to allow the jurors to question the accused when the accused chooses to testify at trial is an abuse of discretion. While we agree that this is a dangerous practice, it was defense counsel that invited the jurors to ask questions of Graves and Graves may not now claim error in that regard.

Accordingly, we hold that permitting jurors to pose questions

11

to witnesses during trial is a matter within the sound discretion of the trial court, and the District Court did not abuse its discretion in this case.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice W. William Leaphart did not participate in this opinion.

12