MURDOCK, Justice
(dissenting).
The main opinion recognizes that the practice of soliciting questions from jurors “should be disfavored and that a trial court should not promote or encourage the practice because it risks ‘altering the role of the jury from neutral fact-finder to inquisitor and advocate.’ ” 12 So.3d at 66 (quoting United States v. Ajmal, 67 F.3d 12, 15 (2d Cir.1995)). The stated risk recognized by the United States Court of Appeals for the Second Circuit in Ajmal weighs sufficiently heavy in my mind to compel me to conclude that the practice of actively soliciting juror questions should be deemed error as a general rule and that it should be allowed only where there are extraordinary or compelling circumstances.[6]
Numerous courts that have considered the practice of actively soliciting juror questions for witnesses have determined that the disadvantages of the practice outweigh the potential advantages. As the Minnesota Supreme Court explained in State v. Costello, 646 N.W.2d 204, 213 (Minn.2002), “maintaining the neutral role of jurors in an adversarial system outweighs whatever enhancement to the truthfinding function that juror questioning allows.” Even among courts that have decided to consider the propriety of juror questioning of witnesses on a case-by-case basis, there is almost universally a recognition that “[allowing jurors to pose questions during a criminal trial is a procedure fraught with perils.” See, e.g., United States v. Sutton, 970 F.2d 1001, 1005 (1st Cir.1992). As the Sutton court aptly put it, “[ijn most cases, the game will not be worth the candle.” Sutton, 970 F.2d at 1005 (emphasis added).
In Steele v. Atlanta Maternal-Fetal Medicine, P.C., 271 Ga.App. 622, 610 S.E.2d 546 (2005), the court explained:
“In this case, the procedures implemented by the trial court modified the traditional roles of the jury, the trial judge, and the lawyers. These procedures encouraged the jury to take an active, inquisitorial role, made the trial judge to some extent the jury’s mouthpiece in pursuing its own version of the facts, and correspondingly reduced counsels’ control over the presentation of the evidence. Clearly these changes have an effect on the traditional adversary system. Although the trial court cited many sources in support of its opinion that the nationwide trend is to allow juries to discuss the evidence before final deliberations and to submit questions for witnesses, we are not persuaded that Georgia has embraced that trend.”
271 Ga.App. at 629, 610 S.E.2d at 552-53 (footnotes omitted). See also State v. Wil *68 liamson, 247 Ga. 685, 279 S.E.2d 203 (1981); Wharton v. State, 734 So.2d 985 (Miss.1998); and State v. Zima, 237 Neb. 952, 468 N.W.2d 377 (1991). The court in Brown v. State, 122 S.W.3d 794, 797-98 (Tex.Crim.App.2003), stated:
“[T]he judge is a neutral arbiter between the advocates; he is the instructor in the law to the jury, but he is not involved in the fray. The advocates have the task of producing the evidence, arguing its significance, and pointing out the logical inferences that flow from that evidence. The jurors, meanwhile, are primarily passive listeners who are supposed to remain open-minded until the evidence is completed and the judge has given them the black-letter law in his written charge. ‘The adversary theory ... maintains that the devotion of the participants, judge, juror and advocate, each to a single function, leads to the fairest and most efficient resolution of the dispute.’[5]
(One footnote omitted.)[7]
In an effort to ameliorate some of the concerns raised by allowing trial courts actively to solicit juror questioning of witnesses, the main opinion identifies a number of recommended safeguards. 12 So.3d at 66 n. 5. The fact that these are only “recommended” safeguards concerns me. Moreover, even if these safeguards were mandatory, they do not go to the core risk associated with allowing trial courts to actively solicit juror questions.
A special concurrence written by the Chief Judge of the United States Court of Appeals for the Eighth Circuit and joined by one of the other two panel members in the case of United States v. Johnson, 892 F.2d 707, 713 (8th Cir.1989), discusses the risks that exist in actively soliciting juror questions, even if safeguards of the nature described in note 5 of the main opinion were mandatory:
*69 “Some would respond to the concerns about juror questions by suggesting that the court could require the questions to be submitted in writing, and the court could then hear and rule on objections outside of the jury’s presence. Apart from concerns about the disruption this procedure might cause, the practice of juror questioning raises an even more basic problem than matters of procedure: The fundamental problem with juror questions lies in the gross distortion of the adversary system and the misconception of the role of the jury as a neutral factfinder in the adversary process. Those who doubt the value of the adversary system or who question its continuance will not object to distortion of the jury’s role. However, as long as we adhere to an adversary system of justice, the neutrality and objectivity of the juror must be sacrosanct.”
(Some emphasis original; some added; footnote omitted.) The author went on to say:
“Allowing juror questions disrupts neutrality, because even a seemingly innocuous response to a seemingly innocuous juror question can sway the jury’s appraisal of the credibility of the witness, the party, and the case. The fact-finder who openly engages in rebuttal or cross-examination, even by means of a neutral question, joins sides prematurely and potentially closes off its receptiveness to further suggestions of a different outcome for the case. While nothing can assure the jury will remain open-minded to the end, keeping the jury out of the advocacy process increases the probability.”
Johnson, 892 F.2d at 713 (emphasis added). Other courts have expressed similar concerns. See, e.g., United States v. Cassiere, 4 F.3d 1006, 1018 (1st Cir.1993) (“[T]he practice should be reserved for exceptional situations, and should not become routine, even in complex cases.”).
In Aymal, supra, the United States Court of Appeals for the Second Circuit concluded that, even with safeguards similar to those recommended by the main opinion, the practice of actively soliciting juror questions for witnesses should be reserved for “extraordinary circumstances”:
“At trial, over the objection of Ajmal’s attorney, the district court allowed extensive juror questioning of witnesses. While conceding that the decision to allow or disallow juror questioning of witnesses lies within the district court’s discretion, see United States v. Witt, 215 F.2d 580, 584 (2d Cir.), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954), Ajmal asserts that the district court abused its discretion by allowing such questioning as a matter of course. We agree.
[[Image here]]
“In our recent discussion of juror questioning of witnesses, we made clear the danger inherent in such a practice. See [United States v. ]Bush, 47 F.3d [511,] 515-16 [(2d Cir.1995)]. When acting as inquisitors, jurors can find themselves removed from their appropriate role as neutral fact-finders. See id. at 515; United States v. Johnson, 892 F.2d 707, 713 (8th Cir.1989) (Lay, C.J., concurring). If allowed to formulate questions throughout the trial, jurors may prematurely evaluate the evidence and adopt a particular position as to the weight of that evidence before considering all the facts. See id. at 714 (‘The factfinder must remain neutral until it is time to make its findings.’); DeBenedetto [ v. Goodyear Tire & Rubber Co.], 754 F.2d [512,] 517 [(4th Cir. 1985) ]. ‘The practice also delays the pace of trial, creates a certain awkward *70 ness for lawyers wishing to object to juror-inspired questions, and runs a risk of undermining litigation strategies.’ [United States v. ]Sutton, 970 F.2d [1001,] 1005 [(1st Cir.1992)]; see also Bush, 47 F.3d at 515. Moreover, juror questioning is particularly troublesome when it is directed at the defendant himself in a criminal trial. See Sutton, 970 F.2d at 1006 n. 6; [United States v. ]Lewin, 900 F.2d [145,] 147 [ (8th Cir. 1990)]. In such circumstances, premature deliberation and expressed skepticism by jurors can be highly prejudicial.
“The case at hand does not present sufficiently ‘extraordinary or compelling circumstances’ as to justify juror questioning of witnesses. Bush, 47 F.3d at 516 (‘Balancing the risk that a juror’s question may be prejudicial against the benefit of issue-clarification will almost always lead trial courts to disallow juror questioning, in the absence of extraordinary or compelling circumstances.’). The district court’s decision to invite juror questioning was not necessitated by the factual intricacies of this banal drug conspiracy, nor was it prompted by the urging of the jurors themselves. Rather, the district court, as a matter of course, established at the outset of the trial that jurors would be allowed to question witnesses. Indeed, the district court encouraged juror questioning throughout the trial by asking the jurors at the end of each witness’s testimony if they had any queries to pose. Not surprisingly, the jurors took extensive advantage of this opportunity to question witnesses, including Ajmal himself. Such questioning tainted the trial process by promoting premature deliberation, allowing jurors to express positions through non-fact-clarifying questions, and altering the role of the jury from neutral fact-finder to inquisitor and advocate. Accordingly, the district court’s solicitation of juror questioning absent a showing of extraordinary circumstances was an abuse of discretion.
“The government urges us to sustain the district court’s actions because it incorporated prophylactic procedures to lessen the potential prejudice caused by juror questioning of witnesses. Specifically, the district court only accepted questions in writing and posed from the bench only those questions which it viewed to comport with the Federal Rules of Evidence. Although the district court substantially complied with the procedures this Court advocated in Bush, 47 F.3d at 516 (juror questions should be 1) in writing; 2) reviewed by counsel in camera; and 3) put to the witness by the court), such measures alone cannot purge the harm caused by the extensive juror questioning in the case at hand. Regardless of the procedures adopted by the district court to vet juror questions, there must be ample justification for adopting the disfavored practice in the first instance. To hold otherwise would sanction juror questioning of witnesses in any circumstance, so long as appropriate prophylactic measures are adopted. We cannot accept such a proposition.”
Ajmal, 67 F.3d at 14-15 (emphasis added).
In this case, the objection registered by defense counsel at trial expressed common-sense concerns in a straightforward manner:
“I object, in that I think though there may arise an occasion where a juror may pose a question to the Court that the Court will allow the juror to ask that question to a witness, as a general rule I would say that that is a policy that is fraught with all kind of dangers.
“First, it takes away the opportunity for either the State of [sic] the defen *71 dant to have a prosecution strategy. And there may be questions that we intentionally don’t ask jurors [sic] for a particular reason, and to allow the jury to have an opportunity to ask a question takes away that opportunity of the lawyer to have any kind of a trial strategy.
“To allow the jurors to do that puts the jury in a position of looking for facts and more than just making a ruling on the evidence before them, but let them have an opportunity to seek evidence. And I think allowing the jury to expand their role to where they’re seeking evidence is outside the scope of what a jury should do. Though I don’t disagree that there may be an occasion a juror may say, ‘Excuse me, Judge. I’d like to ask something.’ And I think in those cases that — depending on the question it may be appropriate.”
Malone’s brief, pp. 23-24. Defense counsel then distinguished the practice of allowing an occasional juror-initiated question from the practice used in the present case of “solicit[ing] a jury, if they have questions, as [the trial court did] after every witness in this case, and asked them and there’s been a long pause if they didn’t have a question so [the trial court’s] basically encouraging them to ask questions.” Id. at 24.
Malone’s argument to this Court also contains straightforward reasons for not allowing the active solicitation of juror questions:
“The jurors are meant to be impartial observers, and to be the finders of fact — facts as presented to them by the prosecution and the defendant. They do not have the role of being investigators or advocates. They only judge on the facts and evidence presented to them. It is the role of the State to present evidence and prove [its] case beyond a reasonable doubt. By soliciting questions from the jurors, [the trial judge puts jurors] in the shoes of the prosecution, or the defense ....
“The actively soliciting of questions from the jury leads the jury to believe that their role is something more than neutral and impartial fact finders, and triers of the evidence as presented to them by the State and the defendant. [Malone] would also argue that the trial court advising the jury at the beginning of the trial that they will be allowed to ask questions puts both defense and state attorneys at a disadvantage. This practice is likely to require the attorney to change their trial strategy, or even their theory of defense, thereby causing prejudice to the defendant, and ultimately change the outcome of the trial.”
Malone’s brief, pp. 25-26.
Based on the foregoing, I respectfully dissent.

. I do not take issue with the various cases cited by the main opinion in which courts have allowed questions from jurors on an occasional, ad hoc basis. My concern is with the more specific issue of the active solicitation by the trial judge of jurors to engage in the questioning of witnesses, especially when the practice is announced by the trial court in advance.

"5 See Morrison v. State, 845 S.W.2d 882, 885 (Tex.Crim.App.1992). This strict division of labor has been explained as necessary because maintaining juror impartiality [is] fundamental to adversarial integrity’ .... Id. at 887.”

. The main opinion comments on my citation to cases from Georgia, Minnesota, Mississippi, Nebraska, and Texas, stating that the courts in these states have not recognized the same rule I would recognize, i.e., a general prohibition of the active solicitation of juror questions, with exceptions available for extraordinary or compelling circumstances. 12 So.3d at 65 n. 4. This is true. Indeed, the courts in these states have taken the even more restrictive approach of disallowing all juror questions. Accordingly, I cite these cases for their articulation of the gravity of the risks associated with allowing juror questions — and only for this purpose. Such use of these cases is appropriate in that, like the courts in these states, I view the articulated risks as weighing more heavily in the balance we must strike today than does the main opinion.
The main opinion also notes that "[i]n disallowing all juror questions, those states are in the decided minority.” 12 So.3d at 65 n. 4. The fact that a complete disallowance of juror questions may be a decidedly minority view, however, is inapposite to the merits of my view. It is not clear how many states would at least impose a rule of the nature I recommend.
I also note the main opinion’s statement that state courts have “overwhelmingly” held that the practice of allowing juror questions is not error per se. 12 So.3d at 63. Again, I emphasize that I do not take the position that any questioning of witnesses by jurors is error or that juror questioning is error per se. My point of departure from the main opinion concerns only the active solicitation by the trial judge of questions from the jurors. It is my position that such a practice, as a general rule, should be treated as error, and that juror questioning should be allowed only when safeguards of the nature described in the main opinion are used and, even then, only in extraordinary or compelling circumstances.