**UNITED STATES of America, Appellee,**

**v.**

**Keith DOUGLAS, Defendant–Appellant.**

**No. 1055, Docket 95–1430.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 20, 1996.

Decided April 11, 1996.

Bruce R. Bryan, Syracuse, N.Y., for defendant-appellant.

Donald T. Kinsella, Asst. U.S. Atty., Albany, N.Y. (Thomas J. Maroney, U.S. Atty., Albany, N.Y., on the brief), for appellee.

Before: NEWMAN, Chief Judge, KEARSE, Circuit Judge, and WEXLER,* District Judge.

* Honorable Leonard D. Wexler, of the United States District Court for the Eastern District of New York, sitting by designation.

JON O. NEWMAN, Chief Judge:

This appeal primarily concerns questioning of witnesses by jurors during the course of a criminal trial. The appeal is brought by Keith Douglas from the July 14, 1995, judgment of the District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge), convicting him, after a jury trial, of narcotics offenses. We conclude that the questioning by jurors, in the circumstances of this case, presents no basis for disturbing the conviction, that the remaining claims are without merit, and that the sentence requires a slight modification. We therefore affirm the conviction and remand for resentencing.

Douglas was convicted of two counts of distribution of cocaine base and two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). He was sentenced primarily to concurrent terms of 92 months. The facts of the offense conduct need not be recounted.

1. *Questioning by Jurors.* At the start of the trial, Judge Scullin included in his general instructions to the jurors the following:

[A]t the conclusion of questioning by the attorneys, I am going to allow you as Jurors to ask any questions you might have. I will ask you when the attorneys are through questioning the witness if you have any questions of that witness. If you wish to ask a question, raise your hand so you can indicate to me that you do have a question. Please do not ask the question out loud. I don't want to have oral questions in open court from the Jury.

I will give you time to put the question in writing. You will have a notebook and paper with you, which I am going to hand out here shortly. Write your question down on a piece of paper in that notebook. The Clerk will collect the questions you have, bring them to me, I will review the questions and if I find they are relevant and appropriate under the Federal Rules of Evidence, I will ask the question.

If, however, I determine the question is not for some reason appropriate or relevant under the Federal Rules of Evidence, then I will advise you that I cannot ask it, I may ask it in a different form or I cannot ask it at all, and I will tell you that. And please, you are not to draw any inference whatsoever from my decision not to ask your question, because there are rules to go by. Some questions I can ask and some I can't, but I encourage you if you have any questions to write them down and I will decide whether or not I can ask that.

Keep in mind the purpose in allowing questions from Jurors is to help you understand the evidence. I caution you, therefore, you should only ask questions that will help you clarify understanding [of] the evidence, it is not for the purpose of developing or exploring some theory you might have or argument you might have concerning the testimony.

Judge Scullin also offered jurors the opportunity to ask questions at the conclusion of the lawyers' questioning of each witness.

During the trial, the jurors availed themselves of the opportunity to ask questions only with respect to one prosecution witness and one defense witness. In both instances, very few questions were asked, and the questions elicited virtually nothing of significance. No questions were asked of the defendant. The record discloses no instances of questions proposed by jurors but not asked by the District Judge.

In three recent cases, we have considered the issue of juror questioning of witnesses. *See United States v. Thompson,* 76 F.3d 442, 448 (2d Cir.1996); *United States v. Ajmal,* 67 F.3d 12, 14 (2d Cir.1995); *United States v. Bush,* 47 F.3d 511, 514 (2d Cir.1995). All three decisions expressed varying degrees of disapproval of juror questioning, though only *Ajmal* concluded that the questioning that occurred warranted reversal of the conviction. *Ajmal,* 67 F.3d at 15.

■ These decisions have identified the risks that jury questioning entails. Among them are the possibilities that a juror might abandon the role of neutral decision-maker and pose questions as an advocate, might

pose questions based on premature evaluation of the evidence, might be distracted from comprehending new testimony by preparing questions on prior testimony, or might inject prejudice by displaying skepticism, especially against the defendant. On the other hand, in some circumstances, an occasional question by a juror might be helpfully asked with no risk of adverse consequences. For example, a juror might not have heard all of a witness's answer or might reasonably need an explanation of some term the witness used.

■ Though we have ruled that a trial judge has discretion to allow questioning by jurors, *Thompson,* 76 F.3d at 448, *Ajmal,* 67 F.3d at 14; *Bush,* 47 F.3d at 515, we have also made clear that the risks of adverse consequences make it inappropriate for a trial judge to invite or encourage such questioning, *Thompson,* 76 F.3d at 448–49, *Ajmal,* 67 F.3d at 15. Doing so risks an undue extent of questioning and might even cause some jurors to feel that they are not fulfilling their responsibilities unless they ask questions.

■ In this case, the trial judge appears to have followed the procedure we recommended in *Bush,* 47 F.3d at 516, by accepting only written juror questions, reviewing the questions with counsel, and asking the questions himself, but he exceeded his allowable discretion by inviting questions both at the start of the trial and at the end of each witness's testimony. Nevertheless, as in *Thompson,* neither the Judge's invitation nor the questioning itself provides any basis for reversal. The questions were directed to only two witnesses, neither of whom was the defendant, and the questions were few in number and of slight significance. To whatever extent error occurred, it was harmless.

■ 2. *Speedy Trial Act.* Appellant contends that the indictment should have been dismissed because the Government violated the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, which requires that the trial of a defendant commence within 70 days of the latest of an indictment, an information, or an appearance before a judicial officer. 18 U.S.C. § 3161(c)(1). Excluded from the 70–day pe-

riod is "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). Both sides agree that the speedy trial clock stopped on July 21, 1994, when defense counsel filed pretrial motions. Forty-nine of the 70 days had passed at that time. The Court ruled on the motions on August 26, 1994, and, in response to defendant's request, scheduled an audibility hearing with respect to certain tape recordings that the Government intended to introduce at trial.

We agree with the Government that, after the other pretrial motions were decided on August 26, 1994, the clock did not restart, because of the pending audibility hearing, until March 1, 1995, the date the trial started. The hearing was delayed because at one point defendant was without counsel, and at other times defense counsel apparently believed the issue could be resolved without a hearing. Defendant's appellate counsel admits that the demand for the hearing was never withdrawn. Even on March 1, 1995, the date the trial commenced, the Court contemplated holding an audibility hearing if requested or necessary. Since subsection (F) "exclude[s] from the Speedy Trial Act's 70–day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary,'" *Henderson v. United States,* 476 U.S. 321, 330, 106 S.Ct. 1871, 1877, 90 L.Ed.2d 299 (1986), the clock was stopped from August 26, 1994, through the start of the trial, because during that entire interval the audibility hearing request remained pending.[1]

■ 3. *Audibility Hearing.* Relying on the prosecutor's concession that some por-

tions of the tape were inaudible, appellant contends that he had a constitutional and statutory right to a pretrial determination of whether the unintelligible portions of the tape were so substantial as to render the recording as a whole inadmissible. However, the District Court was willing to hold an audibility hearing, but counsel apparently resolved the audibility issue before trial. The tape recording of the February 2, 1994, drug transaction was played using a transcript prepared by the defense. The defendant denied that he was a party to the conversation, but the tape was audible enough for the defendant's witnesses to testify that the tape did concern a drug transaction. The February 22, 1994, tape was played using transcripts prepared by the defendant in one version and the Government in a second version. Only a few words were inaudible, and these provide no basis for a claim of error in admitting the tape.

■ 4. *Sentencing Claims.* We have previously rejected the contentions that the differential in punishment between crimes involving cocaine base and those involving powder cocaine violates the Equal Protection Clause, *see United States v. Stevens,* 19 F.3d 93, 97 (2d Cir.1994), and that the definition of cocaine base is unconstitutionally vague, *see United States v. Jackson,* 968 F.2d 158, 163 (2d Cir.), *cert. denied,* 506 U.S. 1024, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). However, as the Government concedes, defendant's Youthful Offender Adjudication in New York should not have been counted in determining the Criminal History Category because it was a juvenile sentence that was more than five years old. *See* U.S.S.G. § 4A1.2(d); *see also* U.S.S.G. § 4A1.1, comment. (n.1), (n.2), (n.3).[2] This error requires a remand for resentencing.

---

1. *United States v. Gambino,* 59 F.3d 353 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1671, 134 L.Ed.2d 776 (1996), is not to the contrary. *Gambino* ruled that the speedy trial clock is not tolled when the trial court has postponed the hearing on a pretrial motion until after trial or after the Government's case in chief, because in such circumstance "the pendency of the motion no longer consumes the court's time and attention"—"[t]he motion has in effect been tabled." *Id.* at 359. In the pending case, the hearing on the motion was not postponed until

after the Government's case or after the trial. Rather, the hearing was only held in abeyance during the pretrial period in order to allow the counsel to come to an agreement on their own. Since the motion was not "tabled," it still counts for Speedy Trial Act purposes.

2. Appellant's contention that a New York Youthful Offender Adjudication cannot be counted as a conviction under the Guidelines, regardless of timeliness, need not be reached.

We have considered appellant's other contentions and conclude that they lack merit. Accordingly, we affirm the conviction, vacate the sentence, and remand for resentencing.