12 So.3d 60 (2008)
Ex parte Roger Tavares MALONE, Jr.
(In re Roger Tavares Malone, Jr. v. State of Alabama).
1061424.
Supreme Court of Alabama.
December 19, 2008.
*61 David S. Luker of David S. Luker, PC & Associates, Birmingham, for petitioner.
Troy King, atty. gen., and Stephanie N. Morman and John J. Davis, asst. attys. gen., for respondent.
SEE, Justice.
Robert Tavares Malone, Jr., seeks a reversal of the decision of the Court of Criminal Appeals affirming, by unpublished memorandum, his conviction in the Jefferson Circuit Court for manslaughter. Malone v. State (No. CR-05-1806, May 18, 2007), 9 So.3d 578 (Ala.Crim.App.2007) (table). We affirm.

Facts and Procedural History
On the night of December 30, 2004, Malone got into an argument with Searcy Owens at a pool hall in Ensley. The argument escalated. Owens hit Malone with at least one pool cue and then grabbed Malone. Malone pulled a gun from his pocket and shot Owens five times in the abdomen; Owens later died from his wounds. Malone was indicted and tried for murder.
At the conclusion of the testimony of the first witness, the trial court informed the State and Malone that it intended to allow *62 jurors to question the witnesses directly. Malone objected, but the trial court overruled Malone's objection. The trial court subsequently issued instructions to the jurors:
"All right, ladies and gentlemen, I will allow you to ask the witness a question. If you have a burning question in your mind as a result of the testimony, if the question is improper then I can't let you ask the question. If you ask a question, you receive the answer. You simply receive it.
"In other words, it would be improper to say, `I believe you or I don't believe you,' that sort of thing, okay? Okay."
Malone's brief at 4-5. Thereafter, as each witness finished testifying, the trial court asked the jurors if they wanted to ask that witness any questions. The jurors asked their questions directly, without first submitting them to the trial court. Jurors asked a total of eight questions of five witnesses. Malone did not object to any specific question, but he objected generally to the trial court's soliciting questions from the jurors. Malone himself testified. At the conclusion of his testimony there were no juror questions, and Malone rested his case. The trial court then excused the jury for the evening. After the jury had left the courtroom, the bailiff informed the judge that one of the jurors had a question for Malone. Malone renewed his earlier objection, and the trial court again overruled it. The judge brought the jury back into the courtroom and allowed the juror to ask Malone a question.
The jury convicted Malone of the lesser-included offense of manslaughter, and the trial court sentenced Malone to 20 years' imprisonment. The Court of Criminal Appeals affirmed Malone's conviction in an unpublished memorandum. Malone v. State (No. CR-05-1806, May 18, 2007), 9 So.3d 578 (Ala.Crim.App.2007) (table). This Court granted certiorari review to address, as a question of first impression, whether a trial court has discretion to invite the jury to ask questions of witnesses in a criminal trial.

Issue
The first issue Malone presents is whether the trial court exceeded its discretion by soliciting jurors to question witnesses directly during a criminal trial. The second issue is whether the trial court exceeded its discretion by allowing a juror to question Malone after he and the State had rested their cases.

Standard of Review
Malone objected to the trial court's practice of soliciting juror questions of witnesses; he did not, however, object to the content or form of any specific question. Trial judges are vested with broad discretion in determining courtroom procedure "as long as the exercise of that discretion does not result in the denial of the defendant's basic constitutional right." Hyde v. State, 778 So.2d 199, 236 (Ala. Crim.App.1998); see also Ephraim v. State, 627 So.2d 1102, 1105 (Ala.Crim.App. 1993).
"`A court exceeds its discretion when its ruling is based on an erroneous conclusion of law or when it has acted arbitrarily without employing conscientious judgment, has exceeded the bounds of reason in view of all circumstances, or has so far ignored recognized principles of law or practice as to cause substantial injustice. Hale v. Larry Latham Auctioneers, Inc., 607 So.2d 154, 155 (Ala. 1992); Dowdy v. Gilbert Eng'g Co., 372 So.2d 11, 13 (Ala.1979).'"
Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama, 991 So.2d 701, 705 (Ala.2008) (quoting Edwards *63 v. Allied Home Mortgage Capital Corp., 962 So.2d 194, 213 (Ala.2007)).

Analysis

I.
Malone first argues that the trial court exceeded its discretion by "actively soliciting questions from the jurors at the conclusion of each witnesses' [sic] testimony." Malone's brief at 19. Malone concedes that there would be times when it would be proper for a court to allow occasional questions by the jurors. We granted certiorari review, however, to determine whether a trial court may actively solicit questions from jurors, which is a material question of first impression before this Court.
Prather v. Nashville Bridge, 286 Ala. 3, 236 So.2d 322 (1970), is the only published case from an Alabama court that has presented the question whether jurors may directly question witnesses. This Court did not, however, reach the merits of that question in Prather because the issue was not properly preserved for appeal.
A substantial number of state courts in other jurisdictions have considered the issue whether jurors may question witnesses. They have overwhelmingly held that the practice is not error per se.[1] Moreover, "every [federal] circuit to consider the practice has permitted it, holding that the decision to allow juror questioning rests within the discretion of the trial judge." United States v. Richardson, 233 F.3d 1285, 1289 (11th Cir.2000).[2] "Allowing jurors to ask witnesses questions is `neither radical nor a recent innovation.' State v. Doleszny, 176 Vt. 203, [211,] 844 A.2d 773, [780] (2004). It is a practice with `deeply entrenched' roots in the common law. United States v. Bush, 47 F.3d 511, 515 (2nd Cir.1995)." Medina v. People, 114 P.3d 845, 851 (Colo.2005). "American courts have long sanctioned the practice." United States v. Bush, 47 F.3d 511, 515 (2d Cir.1995).
The jury's role in a trial is to "`"assure a fair and equitable resolution of factual issues."'" Richardson, 233 F.3d at 1289 (quoting Standard Oil Co. of California v. Arizona, 738 F.2d 1021, 1031 (9th Cir.1984), quoting in turn Colgrove v. *64 Battin, 413 U.S. 149, 157, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973)). Allowing jurors to question witnesses can "serve to advance the search for truth by alleviating uncertainties in the jurors' minds, clearing up confusion, or alerting the attorneys to points that bear further elaboration." United States v. Sutton, 970 F.2d 1001, 1005 n. 3 (1st Cir.1992). Juror questioning can also lead to "more attentive jurors and thereby leads to a more informed verdict." Richardson, 233 F.3d at 1290 (citing Larry Heuer & Steven Penrod, Increasing Juror Participation in Trials: A Field Experiment with Jury Notetaking and Question Asking, 12 Law and Hum. Behav. 231, 233-34 (1988)). Proper communication is necessary for a jury to correctly fulfill its factfinding duty and "there is reason to believe that permitting receivers of information, e.g., jurors, to ask questions enhances not only their ability to understand what is being communicated, but results in their putting forth more effort to listen and to understand because they know they may ask questions." Yeager v. Greene, 502 A.2d 980, 999-1000 (D.C.1985).
Against this consensus, a few states, including Mississippi and Georgia, have forbidden the practice in criminal trials.[3] As reasons for rejecting the practice, those courts cite the jurors' lack of familiarity with the rules of evidence, the risk of counsel's offending jurors by objecting to their questions, a loss of juror objectivity, the potential creation of antagonism between a juror and a witness, and the potential of disruption to courtroom decorum. Wharton v. State, 734 So.2d 985 (Miss. 1998).
One of the concerns expressed by those jurisdictions that do not allow juror questioning is that allowing jurors to directly question witnesses will "redefine[] their role and transform[] them from `fair and impartial' to active participants in the trial." Wharton, 734 So.2d at 988. The Nebraska Supreme Court was concerned that allowing jurors to ask questions would result in "a change in [the jury] system whereby jurors become advocates and possible antagonists of the witnesses." State v. Zima, 237 Neb. 952, 956, 468 N.W.2d 377, 380 (1991). Even courts that allow jurors to ask questions of witnesses note that "[i]t is difficult for jurors to be both active participants in the adversarial process, embroiled in the questioning of witnesses, and detached observers, passing on the credibility of the witnesses and the plausibility of the facts presented." Bush, 47 F.3d at 515. In order to guard against this possibility, most courts that allow juror questioning of witnesses require certain *65 safeguards, such as the submission of written questions for review by the trial judge and an opportunity for counsel to object to the question out of the presence of the jury. See Richardson, 233 F.3d at 1290-91; Bush, 47 F.3d at 511; and Sutton, 970 F.2d at 1005-06.
We agree with the majority position that allowing jurors to question witnesses is not error per se on the part of the trial court. For the same reasons the aforementioned jurisdictions have upheld the practice, we hold that it is within the discretion of the trial court to allow jurors to question a witness.
Malone argues that the trial court here erred when it went beyond merely allowing jurors to ask questions of the witnesses and actively solicited questions from the jurors. In United States v. Ajmal, 67 F.3d 12, 15 (2d Cir.1995), the United States Court of Appeals for the Second Circuit held that the trial court exceeded its discretion by allowing extensive juror questioning as a matter of course and by inviting questions at the end of each witness's testimony. That court stated that the trial court's decision to invite and allow extensive juror questioning was not "necessitated by the factual intricacies of [that case]." Ajmal, 67 F.3d at 14. It also noted that it considered the practice of juror questioning an allowable but disfavored practice.
In contrast, the Supreme Court of Utah, in a case in which the trial judge invited jurors to ask questions at the end of each witness's testimony, held:
"The fact that the trial court granted the jurors permission to ask questions of witnesses without any special request from them for this privilege does not, in our opinion, in and of itself constitute error. The determining factors as to whether error has been committed is the type of questions asked and allowed to be answered. If the questions asked are not germane to the issues involved or are such as would be clearly improper and therefore prejudicial to the rights of the defendants to a fair and impartial trial, the court's allowing them to be answered would be error."
State v. Anderson, 108 Utah 130, 133, 158 P.2d 127, 128 (1945).
We agree with the Utah Supreme Court that soliciting questions from jurors is not error per se, but that whether the trial court has exceeded its discretion in so doing is determined by the type of questions the trial judge allows and whether those questions are prejudicial to the defendant's rights.[4] However, we also agree with the Second Circuit Court of *66 Appeals that the practice should be disfavored and that a trial court should not promote or encourage the practice because it risks "altering the role of the jury from neutral fact-finder to inquisitor and advocate." Ajmal, 67 F.3d at 15.
For the reasons set forth above, we hold that it is within the discretion of the trial court to solicit from jurors questions for the witnesses. We stress, however, that there are dangers inherent in the process. The trial judge in soliciting such questions should, therefore, adopt practices that protect the rights of the accused.[5]
This Court will not reverse a trial court's judgment unless, "after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties." Rule 45, Ala. R.App. P. Here, the questions asked by the jurors were few in number, factual in nature, and did not solicit improper testimony. Moreover, Malone did not object in the trial court to any specific question, nor does he now argue that any specific question posed by a juror affected his substantial rights. Therefore, it does not appear that Malone's substantial rights were affected by the trial court's decision to allow the witnesses to be questioned by the jurors or to solicit those questions from the jurors. Accordingly, we conclude that the trial court did not err in soliciting the jurors to ask questions of the witnesses.

II.
Malone also argues that the trial court exceeded its discretion by allowing a juror to ask Malone a question after Malone and the State had rested their cases. At trial, however, Malone did not object to the timing of this juror question. Malone merely renewed his earlier objection to jurors' asking questions. As the Court of Criminal Appeals noted in its unpublished memorandum:
"`To preserve an issue for appellate review, the issue must be timely raised and specifically presented to the trial court and an adverse ruling obtained.' Mitchell v. State, 913 So.2d 501, 505 (Ala.Crim.App.2005). The purpose of requiring an issue to be preserved for review is to allow the trial court the first opportunity to correct any error. See, e.g., Ex parte Coulliette, 857 So.2d 793 (Ala.2003)."
Because Malone did not raise before the trial court the issue of allowing a question to be asked after the parties had rested their cases, the trial court did not have an opportunity to correct its error, and Malone did not properly preserve the issue for appeal. We, therefore, affirm the judgment of the Court of Criminal Appeals on this ground as well.

Conclusion
Because we hold that the trial court's soliciting the jurors to question the witnesses *67 did not affect Malone's substantial rights and because Malone has not demonstrated any other ground on which the Court of Criminal Appeals' decision should be reversed, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., dissents.
COBB, C.J., recuses herself.
MURDOCK, Justice (dissenting).
The main opinion recognizes that the practice of soliciting questions from jurors "should be disfavored and that a trial court should not promote or encourage the practice because it risks `altering the role of the jury from neutral fact-finder to inquisitor and advocate.'" 12 So.3d at 66 (quoting United States v. Ajmal, 67 F.3d 12, 15 (2d Cir.1995)). The stated risk recognized by the United States Court of Appeals for the Second Circuit in Ajmal weighs sufficiently heavy in my mind to compel me to conclude that the practice of actively soliciting juror questions should be deemed error as a general rule and that it should be allowed only where there are extraordinary or compelling circumstances.[6]
Numerous courts that have considered the practice of actively soliciting juror questions for witnesses have determined that the disadvantages of the practice outweigh the potential advantages. As the Minnesota Supreme Court explained in State v. Costello, 646 N.W.2d 204, 213 (Minn.2002), "maintaining the neutral role of jurors in an adversarial system outweighs whatever enhancement to the truthfinding function that juror questioning allows." Even among courts that have decided to consider the propriety of juror questioning of witnesses on a case-by-case basis, there is almost universally a recognition that "[a]llowing jurors to pose questions during a criminal trial is a procedure fraught with perils." See, e.g., United States v. Sutton, 970 F.2d 1001, 1005 (1st Cir.1992). As the Sutton court aptly put it, "[i]n most cases, the game will not be worth the candle." Sutton, 970 F.2d at 1005 (emphasis added).
In Steele v. Atlanta Maternal-Fetal Medicine, P.C., 271 Ga.App. 622, 610 S.E.2d 546 (2005), the court explained:
"In this case, the procedures implemented by the trial court modified the traditional roles of the jury, the trial judge, and the lawyers. These procedures encouraged the jury to take an active, inquisitorial role, made the trial judge to some extent the jury's mouthpiece in pursuing its own version of the facts, and correspondingly reduced counsels' control over the presentation of the evidence. Clearly these changes have an effect on the traditional adversary system. Although the trial court cited many sources in support of its opinion that the nationwide trend is to allow juries to discuss the evidence before final deliberations and to submit questions for witnesses, we are not persuaded that Georgia has embraced that trend."
271 Ga.App. at 629, 610 S.E.2d at 552-53 (footnotes omitted). See also State v. Williamson, *68 247 Ga. 685, 279 S.E.2d 203 (1981); Wharton v. State, 734 So.2d 985 (Miss.1998); and State v. Zima, 237 Neb. 952, 468 N.W.2d 377 (1991). The court in Brown v. State, 122 S.W.3d 794, 797-98 (Tex.Crim.App.2003), stated:
"[T]he judge is a neutral arbiter between the advocates; he is the instructor in the law to the jury, but he is not involved in the fray. The advocates have the task of producing the evidence, arguing its significance, and pointing out the logical inferences that flow from that evidence. The jurors, meanwhile, are primarily passive listeners who are supposed to remain open-minded until the evidence is completed and the judge has given them the black-letter law in his written charge. `The adversary theory... maintains that the devotion of the participants, judge, juror and advocate, each to a single function, leads to the fairest and most efficient resolution of the dispute.'5
"5 See Morrison v. State, 845 S.W.2d 882, 885 (Tex.Crim.App.1992). This strict division of labor has been explained as necessary because `maintaining juror impartiality [is] fundamental to adversarial integrity' .... Id. at 887."
(One footnote omitted.)[7]
In an effort to ameliorate some of the concerns raised by allowing trial courts actively to solicit juror questioning of witnesses, the main opinion identifies a number of recommended safeguards. 12 So.3d at 66 n. 5. The fact that these are only "recommended" safeguards concerns me. Moreover, even if these safeguards were mandatory, they do not go to the core risk associated with allowing trial courts to actively solicit juror questions.
A special concurrence written by the Chief Judge of the United States Court of Appeals for the Eighth Circuit and joined by one of the other two panel members in the case of United States v. Johnson, 892 F.2d 707, 713 (8th Cir.1989), discusses the risks that exist in actively soliciting juror questions, even if safeguards of the nature described in note 5 of the main opinion were mandatory:

*69 "Some would respond to the concerns about juror questions by suggesting that the court could require the questions to be submitted in writing, and the court could then hear and rule on objections outside of the jury's presence. Apart from concerns about the disruption this procedure might cause, the practice of juror questioning raises an even more basic problem than matters of procedure: The fundamental problem with juror questions lies in the gross distortion of the adversary system and the misconception of the role of the jury as a neutral factfinder in the adversary process. Those who doubt the value of the adversary system or who question its continuance will not object to distortion of the jury's role. However, as long as we adhere to an adversary system of justice, the neutrality and objectivity of the juror must be sacrosanct."
(Some emphasis original; some added; footnote omitted.) The author went on to say:
"Allowing juror questions disrupts neutrality, because even a seemingly innocuous response to a seemingly innocuous juror question can sway the jury's appraisal of the credibility of the witness, the party, and the case. The factfinder who openly engages in rebuttal or cross-examination, even by means of a neutral question, joins sides prematurely and potentially closes off its receptiveness to further suggestions of a different outcome for the case. While nothing can assure the jury will remain open-minded to the end, keeping the jury out of the advocacy process increases the probability."
Johnson, 892 F.2d at 713 (emphasis added). Other courts have expressed similar concerns. See, e.g., United States v. Cassiere, 4 F.3d 1006, 1018 (1st Cir.1993) ("[T]he practice should be reserved for exceptional situations, and should not become routine, even in complex cases.").
In Ajmal, supra, the United States Court of Appeals for the Second Circuit concluded that, even with safeguards similar to those recommended by the main opinion, the practice of actively soliciting juror questions for witnesses should be reserved for "extraordinary circumstances":
"At trial, over the objection of Ajmal's attorney, the district court allowed extensive juror questioning of witnesses. While conceding that the decision to allow or disallow juror questioning of witnesses lies within the district court's discretion, see United States v. Witt, 215 F.2d 580, 584 (2d Cir.), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954), Ajmal asserts that the district court abused its discretion by allowing such questioning as a matter of course. We agree.
". . . .
"In our recent discussion of juror questioning of witnesses, we made clear the danger inherent in such a practice. See [United States v. ]Bush, 47 F.3d [511,] 515-16 [(2d Cir.1995)]. When acting as inquisitors, jurors can find themselves removed from their appropriate role as neutral fact-finders. See id. at 515; United States v. Johnson, 892 F.2d 707, 713 (8th Cir.1989) (Lay, C.J., concurring). If allowed to formulate questions throughout the trial, jurors may prematurely evaluate the evidence and adopt a particular position as to the weight of that evidence before considering all the facts. See id. at 714 (`The factfinder must remain neutral until it is time to make its findings.'); DeBenedetto [v. Goodyear Tire & Rubber Co.], 754 F.2d [512,] 517 [(4th Cir. 1985)]. `The practice also delays the pace of trial, creates a certain awkwardness *70 for lawyers wishing to object to juror-inspired questions, and runs a risk of undermining litigation strategies.' [United States v.]Sutton, 970 F.2d [1001,] 1005 [(1st Cir.1992)]; see also Bush, 47 F.3d at 515. Moreover, juror questioning is particularly troublesome when it is directed at the defendant himself in a criminal trial. See Sutton, 970 F.2d at 1006 n. 6; [United States v.]Lewin, 900 F.2d [145,] 147 [(8th Cir. 1990)]. In such circumstances, premature deliberation and expressed skepticism by jurors can be highly prejudicial.
"The case at hand does not present sufficiently `extraordinary or compelling circumstances' as to justify juror questioning of witnesses. Bush, 47 F.3d at 516 (`Balancing the risk that a juror's question may be prejudicial against the benefit of issue-clarification will almost always lead trial courts to disallow juror questioning, in the absence of extraordinary or compelling circumstances.'). The district court's decision to invite juror questioning was not necessitated by the factual intricacies of this banal drug conspiracy, nor was it prompted by the urging of the jurors themselves. Rather, the district court, as a matter of course, established at the outset of the trial that jurors would be allowed to question witnesses. Indeed, the district court encouraged juror questioning throughout the trial by asking the jurors at the end of each witness's testimony if they had any queries to pose. Not surprisingly, the jurors took extensive advantage of this opportunity to question witnesses, including Ajmal himself. Such questioning tainted the trial process by promoting premature deliberation, allowing jurors to express positions through non-fact-clarifying questions, and altering the role of the jury from neutral fact-finder to inquisitor and advocate. Accordingly, the district court's solicitation of juror questioning absent a showing of extraordinary circumstances was an abuse of discretion.
"The government urges us to sustain the district court's actions because it incorporated prophylactic procedures to lessen the potential prejudice caused by juror questioning of witnesses. Specifically, the district court only accepted questions in writing and posed from the bench only those questions which it viewed to comport with the Federal Rules of Evidence. Although the district court substantially complied with the procedures this Court advocated in Bush, 47 F.3d at 516 (juror questions should be 1) in writing; 2) reviewed by counsel in camera; and 3) put to the witness by the court), such measures alone cannot purge the harm caused by the extensive juror questioning in the case at hand. Regardless of the procedures adopted by the district court to vet juror questions, there must be ample justification for adopting the disfavored practice in the first instance. To hold otherwise would sanction juror questioning of witnesses in any circumstance, so long as appropriate prophylactic measures are adopted. We cannot accept such a proposition."
Ajmal, 67 F.3d at 14-15 (emphasis added).
In this case, the objection registered by defense counsel at trial expressed common-sense concerns in a straightforward manner:
"I object, in that I think though there may arise an occasion where a juror may pose a question to the Court that the Court will allow the juror to ask that question to a witness, as a general rule I would say that that is a policy that is fraught with all kind of dangers.
"First, it takes away the opportunity for either the State of [sic] the defendant *71 to have a prosecution strategy. And there may be questions that we intentionally don't ask jurors [sic] for a particular reason, and to allow the jury to have an opportunity to ask a question takes away that opportunity of the lawyer to have any kind of a trial strategy.
"To allow the jurors to do that puts the jury in a position of looking for facts and more than just making a ruling on the evidence before them, but let them have an opportunity to seek evidence. And I think allowing the jury to expand their role to where they're seeking evidence is outside the scope of what a jury should do. Though I don't disagree that there may be an occasion a juror may say, `Excuse me, Judge. I'd like to ask something.' And I think in those cases thatdepending on the question it may be appropriate."
Malone's brief, pp. 23-24. Defense counsel then distinguished the practice of allowing an occasional juror-initiated question from the practice used in the present case of "solicit[ing] a jury, if they have questions, as [the trial court did] after every witness in this case, and asked them and there's been a long pause if they didn't have a question so [the trial court's] basically encouraging them to ask questions." Id. at 24.
Malone's argument to this Court also contains straightforward reasons for not allowing the active solicitation of juror questions:
"The jurors are meant to be impartial observers, and to be the finders of factfacts as presented to them by the prosecution and the defendant. They do not have the role of being investigators or advocates. They only judge on the facts and evidence presented to them. It is the role of the State to present evidence and prove [its] case beyond a reasonable doubt. By soliciting questions from the jurors, [the trial judge puts jurors] in the shoes of the prosecution, or the defense ....
"The actively soliciting of questions from the jury leads the jury to believe that their role is something more than neutral and impartial fact finders, and triers of the evidence as presented to them by the State and the defendant. [Malone] would also argue that the trial court advising the jury at the beginning of the trial that they will be allowed to ask questions puts both defense and state attorneys at a disadvantage. This practice is likely to require the attorney to change their trial strategy, or even their theory of defense, thereby causing prejudice to the defendant, and ultimately change the outcome of the trial."
Malone's brief, pp. 25-26.
Based on the foregoing, I respectfully dissent.
NOTES
[1] See, e.g., Landt v. State, 87 P.3d 73 (Alaska Ct.App.2004); State v. LeMaster, 137 Ariz. 159, 669 P.2d 592 (Ariz.Ct.App.1983); Nelson v. State, 257 Ark. 1, 513 S.W.2d 496 (1974); People v. McAlister, 167 Cal.App.3d 633, 213 Cal.Rptr. 271 (1985); Gurliacci v. Mayer, 218 Conn. 531, 590 A.2d 914 (1991); Bradford v. State, 722 So.2d 858 (Fla.Dist.Ct.App.1998); Carter v. State, 250 Ind. 13, 234 N.E.2d 650 (1968); Rudolph v. Iowa Methodist Med. Ctr., 293 N.W.2d 550 (Iowa 1980); State v. Culkin, 97 Hawai`i 206, 35 P.3d 233 (2001); State v. Hays, 256 Kan. 48, 883 P.2d 1093 (1994); Transit Auth. of River City v. Montgomery, 836 S.W.2d 413 (Ky.1992); Commonwealth v. Urena, 417 Mass. 692, 632 N.E.2d 1200 (1994); People v. Heard, 388 Mich. 182, 200 N.W.2d 73 (1972); Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852 (Mo. 1993); State v. Graves, 274 Mont. 264, 907 P.2d 963 (1995); State v. Jumpp, 261 N.J.Super. 514, 619 A.2d 602 (1993); State v. Howard, 320 N.C. 718, 360 S.E.2d 790 (1987); State v. Fisher, 99 Ohio St.3d 127, 789 N.E.2d 222 (2003); Cohee v. State, 942 P.2d 211 (Okla.Crim.App. 1997); State v. Anderson, 108 Utah 130, 158 P.2d 127 (1945); State v. Doleszny, 176 Vt. 203, 844 A.2d 773 (2004); and Williams v. Commonwealth, 24 Va.App. 577, 484 S.E.2d 153 (1997).
[2] See, e.g. United States v. Collins, 226 F.3d 457, 461 (6th Cir.2000); United States v. Hernandez, 176 F.3d 719, 724 (3d Cir.1999); United States v. Feinberg, 89 F.3d 333, 336 (7th Cir.1996); United States v. Bush, 47 F.3d 511, 515 (2d Cir.1995); United States v. Cassiere, 4 F.3d 1006, 1017-18 (1st Cir.1993); United States v. Groene, 998 F.2d 604, 606 (8th Cir.1993); United States v. Polowichak, 783 F.2d 410, 413 (4th Cir.1986); and United States v. Callahan, 588 F.2d 1078, 1086 (5th Cir.1979).
[3] Georgia, Minnesota, Mississippi, Nebraska, and Texas have rejected the practice of juror questioning in criminal trials. State v. Williamson, 247 Ga. 685, 279 S.E.2d 203 (1981); State v. Costello, 646 N.W.2d 204 (Minn. 2002); Wharton v. State, 734 So.2d 985 (Miss. 1998); State v. Zima, 237 Neb. 952, 468 N.W.2d 377 (1991); and Morrison v. State, 845 S.W.2d 882 (Tex.Crim.App.1992). Malone also references Ohio and Colorado cases; however, neither of those states prohibits juror questioning. Malone cites Ohio v. Gilden, 144 Ohio App.3d 69, 759 N.E.2d 468 (2001); however, in Ohio v. Fisher, 99 Ohio St.3d 127, 135, 789 N.E.2d 222, 230 (2003), the Ohio Supreme Court overruled that decision and held that "the practice of allowing jurors to question witnesses is not errorconstitutional or otherwise." Malone also cites two Colorado cases: People v. Merklin, 80 P.3d 921 (Colo.Ct.App.2003), and Medina v. People, 114 P.3d 845 (Colo.2005). In both of those cases, the courts held that allowing juror questions was not structural error. Malone cites the Supreme Court of Colorado's discussion in Medina of reasons other courts have rejected the practice of juror questioning; however, the Colorado Supreme Court goes on to reject those reasons and to hold that allowing juror questions does not "violate a defendant's constitutional rights to a fair trial and an impartial jury." Medina, 114 P.3d at 857. Currently, both Ohio and Colorado are among the states that do not prohibit juror questioning.
[4] The dissent would have us hold that solicitation of juror questions for witnesses is error as a general rule, except in extraordinary or compelling circumstances, and, in support of this argument, the dissent cites United States v. Ajmal, supra. We note that other federal courts have not followed Ajmal. See United States v. Feinberg, 89 F.3d 333, 336 (7th Cir. 1996) (holding that juror questions were not prejudicial per se where "[f]ollowing each witness's testimony, [the trial court judge] turned to the jury and inquired whether they had any questions for the witness" and on 10 occasions jurors asked questions). This case is closer to the limited questioning present in Feinberg than to the "extensive" questioning allowed in Ajmal. Moreover, as was the case in Feinberg, Malone has not shown that he suffered any prejudice from the limited number of juror questions allowed in this case.

Justice Murdock, in his dissent, cites in support of his argument also the decisions of the state courts of Georgia, Minnesota, Mississippi, Nebraska, and Texas. However, those courts have not established a general rule disallowing juror questions only when those questions are solicited by the trial court; rather, they have established a rule disallowing all juror questions, whether or not they were solicited. In disallowing all juror questions, those states are in the decided minority. See supra note 1.
[5] The federal courts and the courts of many states follow guidelines for juror questioning of witnesses of the following general form. First, the trial court should instruct the jury, before hearing any witness testimony, that jurors will be permitted to submit questions for the purpose of clarifying the witness's testimony. See United States v. Collins, 226 F.3d 457, 463 (2000); Sutton, 970 F.2d at 1006. Second, proposed questions from jurors should be submitted to the judge in writing. See Bush, 47 F.3d at 516; Sutton, 970 F.2d at 1005-06. Third, the judge should review the questions and confer with the attorneys, outside the presence of the jury, regarding any objections to the proposed questions. This allows the attorneys to object to questions without fear of alienating or antagonizing the jurors. See Richardson, 233 F.3d at 1291. It also protects against witnesses' answering improper questions before the court can intervene. Finally, the judge, not the juror, should "pose the questions to the witness in a neutral manner." Richardson, 233 F.3d at 1290.
[6] I do not take issue with the various cases cited by the main opinion in which courts have allowed questions from jurors on an occasional, ad hoc basis. My concern is with the more specific issue of the active solicitation by the trial judge of jurors to engage in the questioning of witnesses, especially when the practice is announced by the trial court in advance.
[7] The main opinion comments on my citation to cases from Georgia, Minnesota, Mississippi, Nebraska, and Texas, stating that the courts in these states have not recognized the same rule I would recognize, i.e., a general prohibition of the active solicitation of juror questions, with exceptions available for extraordinary or compelling circumstances. 12 So.3d at 65 n. 4. This is true. Indeed, the courts in these states have taken the even more restrictive approach of disallowing all juror questions. Accordingly, I cite these cases for their articulation of the gravity of the risks associated with allowing juror questionsand only for this purpose. Such use of these cases is appropriate in that, like the courts in these states, I view the articulated risks as weighing more heavily in the balance we must strike today than does the main opinion.

The main opinion also notes that "[i]n disallowing all juror questions, those states are in the decided minority." 12 So.3d at 65 n. 4. The fact that a complete disallowance of juror questions may be a decidedly minority view, however, is inapposite to the merits of my view. It is not clear how many states would at least impose a rule of the nature I recommend.
I also note the main opinion's statement that state courts have "overwhelmingly" held that the practice of allowing juror questions is not error per se. 12 So.3d at 63. Again, I emphasize that I do not take the position that any questioning of witnesses by jurors is error or that juror questioning is error per se. My point of departure from the main opinion concerns only the active solicitation by the trial judge of questions from the jurors. It is my position that such a practice, as a general rule, should be treated as error, and that juror questioning should be allowed only when safeguards of the nature described in the main opinion are used and, even then, only in extraordinary or compelling circumstances.